IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JOHNNY HUGHLEY, #10208-002,              *

    Plaintiff,                                               *

    v.                                                              *            2:09-CV-219-TMH
                                                                                         (WO)
TROY KING, ATTORNEY GENERAL,    *
*et al.*,
    Defendants.                                            *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a 42 U.S.C. § 1983/*Bivens*[1] action in which Plaintiff, a federal inmate and convicted sex offender, asserts that the Alabama Community Notification Act, *Ala. Code* 1975 § 15-20-20, *et seq*. (1975, as amended) [hereinafter "the Act" or "ACNA"], is unconstitutional as applied to him. Specifically, Plaintiff complains that application of the Act infringes upon his constitutional right to due process. This case is currently before the court on Plaintiff's motion for preliminary injunction in which he requests that the court prohibit enforcement of the Act's registration and community notification provisions pending resolution of this lawsuit. For the reasons set forth below, the court concludes that

---

[1] A § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). "The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." *Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir. 1980). Thus, courts generally apply § 1983 law to *Bivens* cases. *E.g., Butz v. Economou,* 438 U.S. 478, 500 (1978).

Plaintiff's motion for preliminary injunction should be denied.

## I. THE COMPLAINT

Plaintiff complains that Defendants, who "are not lawyers and ha[ve] little or no specialized training in the law[,]" have determined that he is subject to the ACNA. Plaintiff maintains that the process by which state law enforcement officials have determined that he is subject to the Act is constitutionally inadequate as he has never received notice or a hearing that he is subject to the Act's provisions and further contends that Act is applied on an "ad hoc" basis. (*Doc. No. 1*.)

## II. DISCUSSION

*A. The Alabama Community Notification Act*

The ACNA became effective in 1996 but has since been amended on several occasions to address various constitutional challenges presented to the Act itself and similar versions of Megan's Laws adopted by other states.[2] The ACNA nevertheless remains one of the most far-reaching and restrictive sex offender registration laws in the United States as it requires adults convicted of various sex offenses, regardless of the date of their

---

"In response to the 1994 abduction, rape, and murder of a seven-year-old girl, Megan Kanka, by her neighbor, a convicted sex offender, Congress along with all 50 states enacted laws requiring sex offenders to register their residence with local law enforcement. *See Smith v. Doe*, 538 U.S. 84, 89-90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003). Concerned by Megan's murder and the high number of repeat sex offenders, states enacted these laws for the purpose of notifying the public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes. *See Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4 (2003)." *Doe v. Moore*, 410 F.3d 1337, 1340 (11th Cir.), *cert. denied*, *John Doe I v. Moore*, 546 U.S. 1003 (2005). The Community Notification Act is Alabama's version of such a law.

conviction(s), to register with law enforcement officials prior to their release into society,[3] *Ala. Code* § 15-20-22, and upon a change in their legal residence. *Ala. Code* § 15-20-23. The Act also mandates that law enforcement officials notify members of the public whenever a registered offender establishes a residence in their community.[4]  Additionally, the Act places significant restrictions on where and with whom a registrant may live and work. *Ala. Code* § 15-20-26.

### i. Applicability of Act

"A person convicted of a criminal sex offense [listed in § 15-20-21(4)], including a person who has pleaded nolo contendere to a criminal sex offense, regardless of whether adjudication was withheld" is considered an adult criminal sex offender under Alabama law subject to the Act's registration, notification, residency and employment provisions upon his

---

The Act defines release as "[r]elease from a state prison, county jail, or municipal jail, or release or discharge from the custody of the Department of Youth Services or other juvenile detention, or placement on an appeal bond, probation or parole or aftercare, or placement into any facility or treatment program that allows the offender to have unsupervised access to the public." *Ala. Code* § 15-20-21(10).

Alabama law likewise requires that "any person, except a delinquent child, ... residing in Alabama, [who] has heretofore been convicted, or shall be convicted in any state or municipal court in Alabama, or federal court, or so convicted in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama for [any act of sexual perversion involving a member of the same or the opposite sex, any sexual abuse of any member of the same or the opposite sex, rape, sodomy, sexual misconduct, indecent exposure, promoting prostitution, obscenity, incest or the attempt to commit such offenses], ... shall, upon his or her release from legal custody, register with the sheriff of the county of his or her legal residence within seven days following such release.... For purposes of this article, a conviction includes a plea of nolo contendere, regardless of whether adjudication was withheld. Any person having been so convicted shall upon moving his legal residence from one county to another register with the sheriff of the county to which he has moved within seven days after such removal." *Ala.Code* 1975 § 13A-11-200(b)-(c). The Community Notification Act does not "preclude any criminal sex offender from registering in accordance with Section 13A-11-200" but directs that "such registration unless otherwise proscribed by this article does not trigger public notification." *Ala. Code* § 15-20-33(c).

3

release into society. *Ala. Code* § 15-20-21(1).[5] The statute identifies "criminal sex offense" as any of the following offenses: rape, sodomy, sexual torture, sexual abuse, enticing a child for immoral purposes, promoting prostitution, violation of the Alabama Child Pornography Act,[6] kidnapping of a minor (except by a parent), incest (when the offender is an adult and the victim is a minor), and soliciting a child by computer for purposes of committing a sexual act and transmitting obscene material to a child by computer in violation of the criminal code. *Ala. Code* § 15-20-21(4)a-j. "Any solicitation, attempt, or conspiracy to commit any of the [aforementioned] offenses" is likewise a "criminal sex offense" under the Community Notification Act, *Ala. Code* § 15-20-21(4)k., as is "[a]ny crime committed [in another] jurisdiction, which, if it had been committed in this state under the current provisions of law, would constitute an offense" defined in the Alabama Community Notification Act as a criminal sex offense. *Ala. Code* § 15-20-21(4)*l*. Additionally, the Act provides that "[t]he foregoing notwithstanding, ***any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as*** rape, sodomy, sexual assault, ***sexual battery***, sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography, lewd and lascivious conduct, taking

---

The Act does not exempt convictions based on their date of imposition and therefore applies to any person previously convicted of a criminal sex offense regardless of when the sex offense conviction occurred.

The Alabama Child Pornography Act proscribes: (1) the dissemination or public display of child pornography, 1975 Ala.Code § 13A-12-191; (2) the possession of, and possession with intent to disseminate, child pornography, *id.* § 13A-12-192; and (3) the production of child pornography, *id.* § 13A-12-196 and § 13A-12-197. This Act defines a child as a person under the age of 17 years.

4

indecent liberties with a child, or molestation of a child" is considered a "criminal sex offense" for purposes of applying the Community Notification Act to an offender. *Ala. Code* § 15-20-21(4)m (emphasis added).

If a person is deemed to have committed a criminal sex offense under the concomitant jurisdiction provision set forth in § 15-20-21(4)*l.*, he is provided an administrative hearing to challenge that determination. *Ala. Code* § 15-20-38(a). However, once the Alabama Department of Public Safety "set[s] forth a listing of offenses from other jurisdictions that are to be considered criminal sex offenses under Section 15-20-21(4)*l.* [as directed by the Act] ... any individual convicted of any offense set forth in the listing shall immediately be subject to this article and shall not be entitled to an administrative hearing as [previously] provided...." *Ala. Code* § 15-20-38(b). Application of the Act's provisions is unlimited in duration to an adult criminal sex offender. *Ala. Code* § 15-20-33(a) ("Any adult criminal sex offender shall be subject to this article for life."). With respect to a juvenile criminal sex offender residing in this state, the offender is "subject to this article for a period of ten years from the last date of release. A juvenile criminal sex offender who is subsequently convicted as an adult criminal sex offender within the ten-year period shall be considered solely an adult criminal sex offender." *Ala. Code* § 15-20-33(b).

   *ii. Registration of Criminal Sex Offenders*

Forty-five days prior to release from custody, a criminal sex offender must "declare in writing or by [approved] electronic means . . . the actual address at which he or she will

reside or live upon release and the name and physical address of his or her employer, if any.[7] Any failure to provide timely and accurate declarations shall constitute a Class C felony. Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole." *Ala.Code* § 15-20-22(a)(1).

The Act requires that the responsible agency notify law enforcement officials of the registered sex offender's address. *Ala. Code* § 15-20-22(a)(2)-(3). "The notification shall include all information available to the responsible agency which would be necessary to identify and trace the adult criminal sex offender, including, but not limited to, the offender's declared places of residence and employment, each sex offense history or pre-sentence investigation of the sex offense, fingerprints, and a current photograph of the adult criminal sex offender." *Id*. Registration also applies to criminal sex offenders who are convicted after the effective date of the Act but who are not sentenced to a term of incarceration. *Ala. Code* § 15-20-22(b). If a sentencing court does not impose a sentence of incarceration for a criminal sex offense, the court itself must register the offender with law enforcement officials within 24 hours of release. *Id*.

The Act requires a registered sex offender to verify his address shortly after release and then annually thereafter. *Ala. Code* §15-20-24(a). Within 10 days of receipt of a verification form sent by the Alabama Department of Public Safety, an offender "shall present in person the completed verification form" to appropriate local law enforcement

---

According to records maintained by the Bureau of Prisons, Plaintiff is due to be release from federal custody on September 13, 2009. *Available at http://www.bop.gov*.

officials "who shall obtain fingerprints and a photograph...." *Ala. Code* § 15-20-24(b). All adult criminal sex offenders are required to notify law enforcement officials of their intent to transfer legal residence or place of employment at least 30 days prior to any change in either such status. *Ala. Code* § 15-20-23 and *Ala. Code* § 15-20-23.1.

    *iii. Community Notification*

The Act provides for mandatory community notification upon release of a criminal sex offender and upon receipt by law enforcement officials of the required notice that an offender intends to change his or her legal residence. *Ala. Code* § 15-20-25(a). The comprehensiveness of the required notice varies by location. In Birmingham, Huntsville, Mobile and Montgomery, notice of the sex offender's residence must go out to all residences "within 1,000 feet of the declared residence of the adult criminal sex offender" and to all schools and childcare facilities within three miles of such residence. *Ala. Code* § 15-20-25(a)(1). "In all other cities in Alabama with a resident population of 5,000 or more, [the designated law enforcement official] shall notify all persons who have a legal residence within 1,500 feet of the declared residence of the adult criminal sex offender and all schools and childcare facilities within three miles of the declared residence of the adult criminal sex offender, that the adult criminal sex offender will be establishing his or her residence." *Ala. Code* § 15-20-25(a)(2). In all other areas of the state, "the sheriff of the county in which the adult criminal sex offender intends to reside shall notify all persons who have a legal residence within 2,000 feet of the declared residence of the adult criminal sex offender, and

all schools and child care facilities within three miles of the [sex offender's] declared residence, that the adult criminal sex offender will be establishing his or her residence." *Ala. Code* § 15-20-25(a)(3).

Notification occurs by distribution of a "community notification flyer" via "regular mail or hand delivered to all [requisite] legal residences.... In addition, any other method reasonably expected to provide notification may be utilized, including, but not limited to, posting a copy of the notice in a prominent place at the office of the sheriff and at the police station closest to the declared residence of the released criminal sex offender, publicizing the notice in a local newspaper, or posting electronically, including the Internet, or other means available." *Ala. Code* § 15-20-25(b). The community notification flyer "shall include the following information on the criminal sex offender: Name; actual living address; sex; date of birth; complete physical description, including distinguishing features such as scars, birth marks, or any identifying physical characteristics; and a current photograph. This notification shall also include a statement of the criminal sex offense for which he or she has been convicted, including the age and gender of the victim, the geographic area where the offense occurred, and the date upon which the criminal sex offender will be released. This notification shall also include a statement that the same information is on file [with local law enforcement officials], and that the information will be available to the general public for inspection and identification purposes during regular business hours." *Ala. Code* § 15-20-21(3).

8

*iv. Legislative Intent*

In an amendment to the ACNA effective September 1, 1999, with the last paragraph added by amendment on October 1, 2005, the Alabama legislature expressed its intent in passing the Act. *Ala. Code* § 15-20-20.1. This section, in pertinent part, states that:

> The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is a paramount concern or interest to government. The Legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations, and quickly apprehend criminal sex offenders are impaired by the lack of information about criminal sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders.
>
> The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
>
> Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.
>
> * * *
>
> Therefore, the state policy is to assist local law enforcement agencies' efforts

to protect their communities by requiring criminal sex offenders to register, record their address of residence, to be photographed, fingerprinted, to authorize the release of necessary and relevant information about criminal sex offenders to the public, to mandate residency and employment restrictions upon criminal sex offenders, and to provide certain discretion to judges for application of these requirements as provided in this article.

The Legislature declares that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders.

*B. The Plaintiff*

Attached to Plaintiff's complaint is a copy of his guilty plea transcript entered in *State of Alabama v. Johnny Hughley*, CC-87-116. The transcript shows that Plaintiff entered a plea of guilty to second degree rape on November 30, 1988 in the Circuit Court for Chambers County. The trial court imposed on Plaintiff a three-year term of imprisonment. (*Doc. No. 1 at attachments*.) This conviction subjects Plaintiff to the Alabama Community Notification Act upon his release from prison.

*C. Standard of Review*

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Plaintiff demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury will occur absent issuance of the injunction; (3) the threatened injury to Plaintiff outweighs the potential damage the requested injunction may cause the

non-moving parties; and (4) the injunction would not be adverse to the public interest. *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306  *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983).

"In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites."  *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).  The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.' *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir.1990)." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

It is clear from the requested relief that Plaintiff does not seek issuance of a preliminary injunction to preserve the status quo of the parties until the merits of his claims have been completely adjudicated - which constitutes the limited purpose of a preliminary injunction. *Suntrust Bank*, 268 F.3d at 1265; *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1981). Rather, Plaintiff requests preliminary injunctive relief to alter the status quo and seeks to obtain relief properly sought upon adjudication of the merits of the issues presented in this cause of action but prior to such adjudication.

   *i. Likelihood of Success on the Merits*

Plaintiff challenges application of the ACNA on the ground that its application to him subjects him to a denial of due process. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." "This provision has been interpreted to have both a procedural and substantive component when reviewing state action." *Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005). Under the facts of this case, the court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his claims that the Act deprives him of a constitutionally protected interest in violation of either his procedural or substantive due process rights.

   Plaintiff asserts that the process by which state law enforcement officials determined that he was subject to the ACNA is constitutionally inadequate inasmuch as he was not afforded notice, a hearing, or an opportunity to be heard with respect to the Act's applicability to him. Plaintiff contends that such conduct effectively deprives him of his right

to life, liberty, and/or property. Plaintiff further appears to contend that it was the fact of his subsequent incarceration on an offense unrelated to his second degree rape conviction which triggered application of the ACNA to him. (*Doc. No. 1 at 4-5*.)

      a. *Procedural Due Process*

"The more common procedural component [of the Due Process Clause] guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 2648-49, 159 L.Ed.2d 578 (2004)." *Doe*, 410 F.3d at 1342. To succeed on a procedural due process claim, Plaintiff must establish that (1) the Community Notification Act deprives him of a protected liberty interest, and (2) the procedures accompanying the deprivation are constitutionally inadequate. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Any procedural due process argument Plaintiff seeks to make before this court is foreclosed by *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 7 (2003) as the only relevant fact, *i.e.*, Plaintiff's conviction of a criminal sex offense, is not in dispute. *Doe*, 410 F.3d at 1342. Specifically, with respect to an adult's prior conviction for rape and application of the restrictive provisions of the Act based on such conviction, any procedural due process required prior to deprivation of life, liberty, property or the pursuit of happiness is met through the original proceedings that resulted in the conviction.

      b. *Substantive Due Process*

This substantive component protects fundamental rights that are so "implicit

13

in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *See Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997); *McKinney*, 20 F.3d at 1556. When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267 (citations omitted). The Court, however, is very reluctant to expand substantive due process by recognizing new fundamental rights, explaining:

> we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.

*Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267-68 (citations omitted).

*Doe*, 410 F.3d at 1342-1343.

Substantive due process does not appear to be implicated with respect to Plaintiff's challenge to the dispersal of information as he has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate

information that is already, albeit less conveniently, available in the public domain. In reaching this conclusion, the court relies on the Supreme Court's reasoning in *Smith v. Doe,* 538 U.S. 84 (2003). "Although the issue presented in *Smith* was whether Alaska's internet registry constituted an impermissible ex post facto statute and the registrants did not raise any privacy claims, the Supreme Court's views as to disclosure of Megan's Law information via the internet were made abundantly clear. In rejecting the registrants' argument that posting their information on the internet constituted punishment, the Court stated: '[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation. 538 U.S. at [99], 123 S.Ct. at 1150.' " *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 213 (3rd Cir. 2003).

The *Smith* Court likewise determined that any negative consequences resulting from application of the registration and notification provisions at issue arose from the actions of the registrants themselves. "Although the public availability of the information [provided under the provisions of the Alaska Act] may have a lasting and painful impact on the convicted sex offender, ***these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record***. The State [merely] makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." *Smith*, 538 U.S. at 101 (emphasis added). The Court further noted that the nature of the process mitigated against the offenders'

15

constitutional concerns.

Although the Alabama Act allows for personal notification via regular mail or hand delivered notices to those persons living within extremely close proximity to the convicted sex offender, "any other method reasonably expected to provide notification may be utilized, including, but not limited to, posting a copy of the notice in a prominent place at the office of the sheriff and at the police station closest to the declared residence of the released criminal sex offender, publicizing the notice in a local newspaper, or posting electronically, including the Internet, or other means available.... Nothing in this article shall be construed as prohibiting the Department of Public Safety, a sheriff, or a chief of police from providing community notification under the provisions of this article electronically or by publication or periodically to persons whose legal residence is more than the applicable distance from the residence of an adult criminal sex offender." *Ala. Code* § 15-20-25(b)-(c). Thus, the vast majority of "individual[s] seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for [the State's] citizenry." *Smith*, 538 U.S. at 99.

The Alabama legislature articulates its reasoning for the Community Notification as "the protection of the public from [recidivist criminal sex] offenders.... The system of registering criminal sex offenders is a proper exercise of the state's police power regulating

16

present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community." *Ala. Code* § 15-20-20.1.

In explaining its rationale for disseminating information about convicted sex offenders and establishing residency/employment restrictions, the legislature stated that "[p]ersons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities." *Ala. Code* § 15-20-20.1. Finally, the legislature specifically expressed "that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." *Id*.

In light of the express intent of the legislature, this court finds that the ACNA is rationally related to a legitimate government interest and is, therefore, constitutional. *Doe*, 410 F.3d at 1345 ("It has long been in the interest of government to protect its citizens from criminal activity and we find no exceptional circumstances in this case to invalidate the law."). Accordingly, the court concludes that there is a not a substantial likelihood that Plaintiff will succeed on the merits of a substantive due process claim.

### III. CONCLUSION

Plaintiff fails to establish a substantial likelihood of success on the merits of his claims for relief. The pleadings before the court, therefore, fail to demonstrate that Plaintiff meets each of the prerequisites necessary for issuance of a preliminary injunction. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction (*Doc. No. 1*) filed by Plaintiff be DENIED.

2. This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that on or before **April 8, 2009** the parties may file objections to the Recommendation.  Any objection must specifically identify the findings in the Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in the Recommendation

shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit issued prior to September 30, 1981.

Done, this 27th day of March 2009.

 /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE