IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JOHNNY HUGHLEY,                       *

      Plaintiff,               *

      v.                   *       2:09-CV-219-TMH
                                  (WO)

TROY KING, ATTORNEY GENERAL,   *
*et al*.,
      Defendants.         *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983/*Bivens*[1] action, Plaintiff, an inmate currently incarcerated

at the Tallapoosa County Jail in Dadeville, Alabama,  asserts the Alabama Community

Notification Act, *Ala. Code* 1975 § 15-20-20 et seq. (1975, as amended) ["the ACNA" or

"the Act"], is unconstitutional as applied to him.  Specifically, Plaintiff complains that

application of the ACNA's provisions to him violates his constitutional right to due

process. Plaintiff names as defendants  former Attorney General Troy King, former

Director of Public Safety W.M. Coppage, Captain James Major of the Lee County Sheriff's

---

[1] A § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). "The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." *Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir. 1980). Thus, courts generally apply § 1983 law to *Bivens* cases. *E.g., Butz v. Economou,* 438 U.S. 478, 500 (1978).

Office, and United States Probation Officer Stan Robinson. Plaintiff requests monetary damages.[2]  (*See Doc. Nos. 5, 16.*)

Defendants filed answers, special reports, and relevant supporting evidentiary materials addressing Plaintiff's claims for relief.  The court then informed Plaintiff that Defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment.  Plaintiff filed a response to the special reports filed by Defendants.  Thus, this case is now pending on Defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof, and the response filed by Plaintiff, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I.  THE COMPLAINT

Plaintiff entered a plea of guilty to second degree rape on November 30, 1988 in the Circuit Court for Chambers County, Alabama.[3]  *See  State of Alabama v. Johnny Hughley*, CC-87-116.  (*Doc.  No.  1 at attachments*.)  The trial court sentenced Plaintiff for that

---

[2]The court previously denied Plaintiff's request for preliminary injunctive relief.  (*See Doc. Nos. 5, 16.*)

[3]In his opposition, Plaintiff references entry of a "nolo contendere" plea to second degree rape in 1987.  Attached to Plaintiff's complaint and opposition is a transcript of the proceedings in *State v. Hughley*, CC-87-116, held before the Circuit Court for Chambers County on November 30, 1988. The transcript shows that Plaintiff entered a guilty plea, not a nolo plea, to second degree rape.  (*Doc. No. 1 at attachments.*)  Even had Plaintiff entered a plea of nolo contendere to second degree rape, he would still be subject to the provisions of the ACNA.

conviction to a three-year term of imprisonment. (*Id*.)  This conviction subjects Plaintiff to the Alabama Community Notification Act upon his release from prison.

In the complaint, Plaintiff alleges that the process by which law enforcement officials have determined that he is subject to the ACNA is constitutionally inadequate where he has never received notice or a hearing regarding application of the Act to him.  Plaintiff asserts that Defendants, who "are not lawyers and ha[ve] little or no specialized training in the law[,]" have determined that he is subject to the ACNA without providing any objective standard or written explanation prior to making such determination.  Plaintiff further contends that Act is applied on an "ad hoc" basis.  (*Doc. No. 1*.)

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision,

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims properly before this court.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A

---

"[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be

granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

"In response to the 1994 abduction, rape, and murder of a seven-year-old girl, Megan Kanka, by her neighbor, a convicted sex offender, Congress along with all 50 states enacted laws requiring sex offenders to register their residence with local law enforcement. *See Smith v. Doe*, 538 U.S. 84, 89-90 (2003). Concerned by Megan's murder and the high number of repeat sex offenders, states enacted these laws for the purpose of notifying the

public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes.  *See Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 123 S.Ct. 1160, 1163, 155 L.Ed.2d 98 (2003)."  *Doe v. Moore*, 410 F.3d 1337, 1340 (11th Cir.), *cert. denied*, *John Doe I v. Moore*, 546 U.S. 1003 (2005).  The Community Notification Act is Alabama's version of such a law.

*A.  The Alabama Community Notification Act*

The Alabama Community Notification Act became effective in 1996 but has since been amended on several occasions to address various constitutional challenges presented to the Act itself and similar versions of Megan's Laws adopted by other states.  The Alabama Community Notification Act nevertheless remains one of the most far-reaching and restrictive sex offender registration laws in the United States as it requires adults convicted of various sex offenses, regardless of the date of their conviction(s), to register with law enforcement officials prior to their release into society,[5] *Ala. Code* § 15-20-22, and upon a change in their legal residence.  *Ala. Code* § 15-20-23.  The Act also mandates that law enforcement officials notify members of the public whenever a registered offender establishes a residence in their community.[6]   Additionally, the Act places significant

---

[5]The Act defines release as "[r]elease from a state prison, county jail, or municipal jail, or release or discharge from the custody of the Department of Youth Services or other juvenile detention, or placement on an appeal bond, probation or parole or aftercare, or placement into any facility or treatment program that allows the offender to have unsupervised access to the public."  *Ala. Code*  § 15-20-21(10).

[6]Alabama law likewise requires that "any person, except a delinquent child, ... residing in Alabama, [who] has heretofore been convicted, or shall be convicted in any state or municipal court in Alabama, or

restrictions on where and with whom a registrant may live and work.  *Ala. Code* § 15-20-26.

### i. *Applicability of Act*

"A person convicted of a criminal sex offense [listed in § 15-20-21(4)], including a person who has pleaded nolo contendere to a criminal sex offense, regardless of whether adjudication was withheld" is considered an adult criminal sex offender under Alabama law subject to the ACNA's registration, notification, residency and employment provisions upon his release into society.[7]  *Ala. Code* § 15-20-21(1). If a person is deemed to have

---

federal court, or so convicted in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama for [any act of sexual perversion involving a member of the same or the opposite sex, any sexual abuse of any member of the same or the opposite sex, rape, sodomy, sexual misconduct, indecent exposure, promoting prostitution, obscenity, incest or the attempt to commit such offenses], ... shall, upon his or her release from legal custody, register with the sheriff of the county of his or her legal residence within seven days following such release....  For purposes of this article, a conviction includes a plea of nolo contendere, regardless of whether adjudication was withheld.  Any person having been so convicted shall upon moving his legal residence from one county to another register with the sheriff of the county to which he has moved within seven days after such removal."  *Ala.Code* 1975 § 13A-11-200(b)-(c).  The Community Notification Act does not "preclude any criminal sex offender from registering in accordance with Section 13A-11-200" but directs that "such registration unless otherwise proscribed by this article does not trigger public notification."  *Ala. Code* § 15-20-33(c).

[7]The statute identifies "criminal sex offense" as any of the following offenses: rape, sodomy, sexual torture, sexual abuse, enticing a child for immoral purposes, promoting prostitution, violation of the Alabama Child Pornography Act, kidnapping of a minor (except by a parent), incest (when the offender is an adult and the victim is a minor), and soliciting a child by computer for purposes of committing a sexual act and transmitting obscene material to a child by computer in violation of the criminal code.  *Ala. Code* § 15-20-21(4)a-j.  "Any solicitation, attempt, or conspiracy to commit any of the [aforementioned] offenses" is likewise a "criminal sex offense" under the Community Notification Act, *Ala. Code* § 15-20-21(4)k, as is "[a]ny crime committed [in another] jurisdiction, which, if it had been committed in this state under the current provisions of law, would constitute an offense" defined in the Alabama Community Notification Act as a criminal sex offense.  *Ala. Code* § 15-20-21(4)*l*.  Additionally, the Act provides that "[t]he foregoing notwithstanding, any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as rape, sodomy, sexual assault, sexual battery, sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography,

committed a criminal sex offense under the concomitant jurisdiction provision set forth in *Ala. Code* § 15-20-21(4)*l*, he is provided an administrative hearing to challenge that determination.  *Ala. Code* § 15-20-38(a).  However, once the Alabama Department of Public Safety "set[s] forth a listing of offenses from other jurisdictions that are to be considered criminal sex offenses under Section 15-20-21(4)*l*. [as directed by the Act] ... any individual convicted of any offense set forth in the listing shall immediately be subject to this article and shall not be entitled to an administrative hearing as [previously] provided...." *Ala. Code* § 15-20-38(b).  Application of the ACNA's provisions to an adult sex offender is unlimited in duration.  *Ala. Code* § 15-20-33(a) ("Any adult criminal sex offender shall be subject to this article for life.").  With respect to a juvenile criminal sex offender residing in this state, the offender is "subject to this article for a period of ten years from the last date of release.  A juvenile criminal sex offender who is subsequently convicted as an adult criminal sex offender within the ten-year period shall be considered solely an adult criminal sex offender." *Ala. Code* § 15-20-33(b).

   *ii.  Residency and Employment Restrictions*

   The ACNA contains several restrictions on residency and employment for an adult criminal sex offender.  The ACNA likewise limits the circumstances under which a

---

lewd and lascivious conduct, taking indecent liberties with a child, or molestation of a child" is  considered a "criminal sex offense" for purposes of applying the Community Notification Act to an offender. *Ala. Code* § 15-20-21(4)m.

criminal sex offender may change his name. *Ala. Code* § 15-20-36. Under amendments effective September 1, 2006, adult criminal sex offenders are subject to electronic monitoring. *Ala. Code* § 15-20-26.1. In addition, "[e]very adult criminal sex offender who is a resident of this state shall obtain and always have in his or her possession either a valid driver's license or identification card issued by the Alabama Department of Public Safety." *Ala. Code* § 15-20-26.2(a)-(b).

### iii. Registration of Criminal Sex Offenders

Forty-five days prior to release from custody, a criminal sex offender must "declare in writing or by [approved] electronic means ... the actual address at which he or she will reside or live upon release and the name and physical address of his or her employer, if any. Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole." *Ala.Code* § 15-20-22(a)(1).[8] The ACNA requires the responsible

---

[8]The 2009 amendment to the ACNA requires that an adult sex offender provide his address to the responsible agency within one hundred and eighty days (180) prior to his release from incarceration. The court notes the Alabama Court of Criminal Appeals recently held the registration requirement of §15-20-22(a)(1) was unconstitutional ***as applied*** to an indigent and homeless criminal sex offender convicted for failing to comply with this requirement. *State v. Adams*, ___ So.3d ____, 2010 WL 4380236 (Ala.Cr.App. 2010). In light of this ruling, the registration requirement cannot now be applied to homeless and indigent sex offenders. A proposed bill pending before the Alabama legislature "would create registration requirements for homeless sex offenders and close the loophole that is in the current law. Homeless sex offenders would be required to register weekly [providing merely a description of the location(s) where he resides] until a fixed residence is established." 2011 AL H.B. 378 - Synopsis of Proposed Bill. In Section 12 of the proposed legislation, "[a]n adult sex offender who no longer has a fixed residence shall be considered homeless and shall appear in person and report such change in fixed residence to local law enforcement where he or she is located immediately upon such change in fixed residence. In addition to complying with the registration and verification requirements ..., a homeless sex offender who lacks a fixed residence, or who does not provide an address at a fixed residence at the time of release or registration, shall report in person once every seven days to local law enforcement where he or she resides."

agency to notify law enforcement officials of the registered sex offender's potential address. *Ala. Code* § 15-20-22(a)(2)-(3).  "The notification shall include all information available to the responsible agency which would be necessary to identify and trace the adult criminal sex offender, including, but not limited to, the offender's declared places of residence and employment, each sex offense history or pre-sentence investigation of the sex offense, fingerprints, and a current photograph of the adult criminal sex offender." *Ala. Code* § 15-20-22(a)(2).  The ACNA requires a registered sex offender to verify his address with local law enforcement officials in person shortly after release from incarceration and then bi-annually thereafter.  *Ala. Code*  §15-20-24(a). All adult criminal sex offenders are required to notify appropriate law enforcement officials of their intent to transfer legal residence or place of employment at least 30 days prior to any change in either such status. *Ala. Code* § 15-20-23 and *Ala. Code* § 15-20-23.1.  Any violation of these registration requirements constitutes a Class C felony.  *Ala. Code* § 15-20-22(d).

> iv.  *Community Notification*

The Alabama Community Notification Act provides for mandatory community notification upon release of a criminal sex offender and upon receipt by law enforcement officials of the required notice that an offender intends to change his or her legal residence. *Ala. Code* § 15-20-25(a).  The comprehensiveness of the required notice varies by location. *See Ala. Code* §§ 15-20-25(a)(1-3 ).

*v. Legislative Intent*

In an amendment to the Community Notification Act effective September 1, 1999, with the last paragraph added by amendment on October 1, 2005, the Alabama legislature expressed its intent in passing the ACNA.  *Ala. Code* § 15-20-20.1.  This section, in pertinent part, states that:

> The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is a paramount concern or interest to government. The Legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations, and quickly apprehend criminal sex offenders are impaired by the lack of information about criminal sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders.

> The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.

> Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.

12

\* \* \*

Therefore, the state policy is to assist local law enforcement agencies' efforts to protect their communities by requiring criminal sex offenders to register, record their address of residence, to be photographed, fingerprinted, to authorize the release of necessary and relevant information about criminal sex offenders to the public, to mandate residency and employment restrictions upon criminal sex offenders, and to provide certain discretion to judges for application of these requirements as provided in this article.

The Legislature declares that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders.

## B. *Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." "This provision has been interpreted to have both a procedural and substantive component when reviewing state action." *Moore*, 410 F.3d 1342. Under the facts of this case, the court finds that Plaintiff has failed to meet his burden of proof showing the ACNA has deprived him of a constitutionally protected interest in violation of either his procedural or substantive due process rights.

Plaintiff asserts that the process by which state law enforcement officials determined that he is subject to the ACNA is constitutionally inadequate inasmuch as he was not afforded notice, a hearing, or an opportunity to be heard with respect to the Act's applicability to him. Plaintiff contends that such conduct effectively deprives him of his right

to life, liberty, and/or property. Plaintiff further contends that it was the fact of a subsequent incarceration on an offense unrelated to his second degree rape conviction which triggered application of the ACNA to him. (*Doc. No. 1 at 4-5.*)

    *i  Procedural Due Process*

"The more common procedural component [of the Due Process Clause] guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 2648-49, 159 L.Ed.2d 578 (2004)."  *Moore*, 410 F.3d at 1342.  To succeed on a procedural due process claim, Plaintiff must establish that (1) the ACNA deprives him of a protected liberty interest, and (2) the procedures accompanying the deprivation are constitutionally inadequate.  *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Any procedural due process argument Plaintiff seeks to make before this court is foreclosed by *Connecticut Department of Public Safety*, 538 U.S. at  7, in which the Supreme Court held "that no liberty interest was implicated because the Connecticut [sex offender registration statute] turned 'on an offender's conviction alone' and dangerousness 'is of no consequence under' the law." *Moore*, 410 F.3d at 1342 at n.3.  Like the Connecticut law, the ACNA "does not turn on the dangerousness of the offender, merely the fact that he or she was convicted [of a sex offense]."  *Id*.  Thus, with respect to Plaintiff's procedural due process argument, the only relevant fact, *i.e.*, his conviction of

a criminal sex offense, is not in dispute.  Specifically, with respect to an adult's prior

conviction for second degree rape and application of the restrictive provisions of the

ACNA based on such conviction, any procedural due process required prior to deprivation

of life, liberty, property or the pursuit of happiness is met through the original proceedings

that resulted in the conviction.  *Connecticut Department of Public Safety*, 538 U.S. at 7-8.

### ii.  Substantive Due Process

This substantive component protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *See Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc).  Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses.  *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997); *McKinney*, 20 F.3d at 1556.  When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest."  *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights.  *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).  These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267 (citations omitted).  The Court, however, is very reluctant to expand substantive due process by recognizing new fundamental rights, explaining:

> we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and

open-ended." By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.

*Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267-68 (citations omitted).

*Moore*, 410 F.3d at 1342-1343.

Substantive due process does not appear to be implicated with respect to Plaintiff's challenge to the ACNA's applicability to him.   Nonetheless, the court finds that in *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court determined that any negative consequences resulting from application of the registration and notification provisions at issue arose from the actions of the registrants themselves. "Although the public availability of the information [provided under the provisions of the Alaska Act] may have a lasting and painful impact on the convicted sex offender, ***these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record***. The State [merely] makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." *Id.* at 101 (emphasis added). The *Smith* Court further noted that the nature of the process mitigated against the offenders' constitutional concerns.

The Alabama legislature articulates its reasoning for the Community Notification as

16

"the protection of the public from [recidivist criminal sex] offenders....  The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct.  Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community."  *Ala. Code* § 15-20-20.1.

In explaining its rationale for disseminating information about convicted sex offenders and establishing residency/employment restrictions, the legislature stated that "[p]ersons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government.  In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities."  *Ala. Code* § 15-20-20.1.  Finally, the legislature specifically expressed "that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders

and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders." *Id*.

The Alabama Community Notification Act by its specific and express terms applies to "[a] person convicted of a criminal sex offense ..." *Ala.Code* § 15-20-21(1). The ACNA delineates second degree rape as such an offense. *Ala.Code* § 15-20-21(4)a. The Alabama legislature therefore decided that all adults convicted of second degree rape are subject to registration under the ACNA, regardless of the date of their conviction. Consequently, due process requirements with respect to such offenses are met through the original criminal proceedings that resulted in the sex offense convictions. *Connecticut Department of Public Safety*, 538 U.S. at 7. Based on the foregoing, the court finds that Defendants are due to be granted summary judgment on Plaintiff's due process claims.

*C.  The Ex Post Facto Challenge*

The *Ex Post Facto Clause* directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).  To the extent Plaintiff contends the ACNA imposes unconstitutional punishment under the *Ex Post Facto* Clause because the statute's provisions impose greater punishment than the law applicable to his rape conviction at the time it was committed (*see Doc. No. 53*), such claim entitles

him to no relief.

The Supreme Court's decision in *Smith*, 538 U.S. 84, appears to foreclose Plaintiff's argument. In that case, the Court held that Alaska's sex offender registration act did not violate the *Ex Post Facto* clause, concluding that: (1) the Alaska legislature had intended the Act as a civil, non-punitive regulation aimed at protecting the public rather than punishing former sex offenders; and (2) the plaintiffs had not proved that the Act's effects transformed it into a criminal penalty, despite the legislature's intent to create a civil regulation. *See Id*. at 105-106. The court upheld the criminal penalties imposed on sex offenders for failing to register because "any prosecution [for failing to register] is a proceeding separate from the individual's original offense." *Id*. at 100; *see also United States v. Ambert,* 561 F.3d 1202, 1207-08 (11th Cir. 2009) (holding federal Sex Offender Registration and Notification Act does not violate *Ex Post facto* clause because punishment was for violation of a new registration duty, not retroactive punishment for underlying offense).

Other than the registration requirements and residency/employment restrictions, the ACNA does not place mandatory conditions upon a sex offender nor does it provide for the offender's supervision by law enforcement officials.  Although convicted sex offenders living in the free-world must advise law enforcement officials of their intent to change residences and/or places of employment, they may undertake such action in accordance with the ACNA's restrictions without having to seek or receive permission to do so.  While

19

a sex offender who fails to comply with the ACNA's reporting/registration requirements may be subjected to criminal prosecution for that failure, "any prosecution is a proceeding separate from the individual's original offense." *Smith*, 538 U.S. at 101-102. The ACNA's directives requiring a sex offender to undertake an in-person verification of his address with local law enforcement officials at 6-month intervals "make a valid regulatory program effective and do not impose punitive restraints in violation of [either] the Ex Post Facto [or Double Jeopardy] Clause[s]." *Id.* at 102.

Here, Plaintiff has failed to produce any evidence that the effects of the ACNA negate Alabama's intention to establish a  civil regulatory scheme.  This court cannot "deem[] [the ACNA] punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance.  The [challenges presented by Plaintiff do] not suggest that the Act's nonpunitive purpose is a 'sham or mere pretext.'" *Smith*, 538 U.S. at 103 (citation omitted).  The ACNA, when examined in light of the challenge presented by Plaintiff, does not impose punitive restraints.  Thus, retroactive application of the ACNA does not violate the *Ex Post Facto* Clause of the Constitution. Accordingly, Defendants are entitled to summary judgment on Plaintiff's *ex post facto* claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motions for summary judgment (*Doc. Nos. 24, 36, 44, 46*) be

GRANTED.

2.   Judgment be ENTERED in favor of Defendants and against Plaintiff; and

3.   Costs be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that  on or before **September 15, 2011** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th  day of August 2011.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE